[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 37.]

THE STATE EX REL. WILSON-SIMMONS *v.* LAKE COUNTY SHERIFF'S
DEPARTMENT.

[Cite as *State ex rel. Wilson-Simmons v. Lake Cty. Sheriff's Dept.*,
1998-Ohio-597.]

*Public records—Mandamus to compel Lake County Sheriff's Department to grant
relator access to alleged racist electronic mail against her generated by
individual corrections facility co-workers—E-mail not accessible as
"public record," when—Writ and request for attorney fees denied.*

(No. 97-797—Submitted March 24, 1998—Decided May 20, 1998.)

IN MANDAMUS.

———————————

{¶ 1} Relator, Trudy Wilson-Simmons, has been employed as a corrections
officer at respondent, Lake County Sheriff's Department, since March 1990. In
February 1995, Wilson-Simmons complained to Frank Leonbruno, the
administrator of the Lake County Detention Facility, that other corrections officers
were using the jail's electronic mail (e-mail) system to make racial slurs against
her. Wilson-Simmons told Leonbruno that she had been advised of the racist e-
mail by another unnamed corrections officer. Wilson-Simmons also orally
requested to view the e-mail generated by every officer in the Lake County
Detention Facility. On the same day that Wilson-Simmons talked to Leonbruno,
he posted a notice and drafted a memorandum to all employees that the use of e-
mail for making racial slurs would not be tolerated by the sheriff. In the absence,
however, of further details by Wilson-Simmons concerning the names of the
suspected wrongdoers, the substance of the alleged racist remarks, and the name of
the officer who had informed her of the racist e-mail, Leonbruno was unable to
further investigate the allegation.

**{¶ 2}** Nevertheless, upon Leonbruno's request, Wilson-Simmons submitted a more specific request to view the e-mail of five corrections officers for a period of January 1 through January 28, 1995 and to make copies as needed. Shortly thereafter, on February 13, 1995, Chief Deputy William E. Crosier informed Wilson-Simmons that although e-mail was a public record and she had the right to view it, she would have to pay $2,521.40 plus the cost of any copies she requested because it would take the Lake County Sheriff's Department's computer specialist one hundred forty hours (at her hourly rate of $18.01 per hour) to reconstruct the requested e-mail. The Lake County Sheriff's Department's standard fee schedule for copies of public records was three dollars for reports consisting of five pages or fewer.

**{¶ 3}** The sheriff's department's e-mail records are not readily accessible and must be reconstructed in order to be printed out. In order to clear computer memory and prevent the detention facility's computer system from crashing due to lack of available memory, the computer system relegates e-mail older than one day that has not been deleted to a backup system, which is not readily accessible without expert reconstruction. During the period of the alleged racist e-mail, the e-mail system was not functioning properly, resulting in frequent loss of e-mail. In 1996, a new e-mail system was installed that cannot read data from the old system. In addition, the sheriff's department writes over backup data every week in order to conserve storage space. Due to the volume of data stored in the computer system, any e-mail pertinent to Wilson-Simmons's request no longer exists.

**{¶ 4}** According to Wilson-Simmons, following her February 1995 request for access to the alleged racist e-mail, the sheriff's department unlawfully retaliated against her by assigning her to more difficult duties and unfairly disciplining her. In October 1996, she filed a suit in federal district court, alleging that the sheriff's department and the sheriff had engaged in unlawful racial discrimination against her and had retaliated against her for complaining about it. Wilson-Simmons

alleged violations of, among other provisions, Sections 1981 and 1983, Title 42, U.S.Code.

{¶ 5} In 1997, more than two years following the sheriff's department's refusal to give her access to the requested e-mail unless she paid $2,521.40 for the cost of reconstructing the records, Wilson-Simmons filed this action for a writ of mandamus to compel the sheriff's department to provide access to the requested e-mail and to provide copies at cost rather than by charging reconstruction expenses and the standard fee of three dollars or more. After the sheriff's department filed an answer, we issued an alternative writ and a schedule for the presentation of evidence and briefs.

{¶ 6} Following the submission of evidence and briefs, the parties filed various motions, including the sheriff's department's motions to strike Wilson-Simmons's evidence and her motion for partial summary judgment, as well as Wilson-Simmons's motion for leave to file an amended complaint. The sheriff's department also filed a motion to dismiss for lack of subject-matter jurisdiction, attaching a copy of an October 1997 order of the federal district court granting the sheriff's department and the sheriff summary judgment on Wilson-Simmons's claims of unlawful discrimination and retaliation. Wilson-Simmons moved to strike the sheriff's department's motion on the basis that it should have been filed before it filed an answer.

{¶ 7} The cause is now before the court for a consideration of the merits as well as the parties' pending motions.

_____

*Joseph R. Compoli, Jr.,* and *James R. Goodluck*, for relator.

*Charles E. Coulson*, Lake County Prosecuting Attorney, and *Michael P. Brown*, Assistant Prosecuting Attorney, for respondent.

_____

*Per Curiam.*

*Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

**{¶ 8}** The sheriff's department filed a motion to dismiss for lack of subject-matter jurisdiction. In response, Wilson-Simmons filed a motion to strike the sheriff's department's motion because it was filed after the sheriff's department had filed an answer.

**{¶ 9}** We overrule Wilson-Simmons's motion to strike. Contrary to her claims, the issue of subject-matter jurisdiction cannot be waived and therefore can be raised at any time during the proceedings. *In re Byard* (1996), 74 Ohio St.3d 294, 296, 658 N.E.2d 735, 737, citing Civ.R. 12(H)(3); S.Ct.Prac.R. X(2) ("All original actions shall proceed under the Ohio Rules of Civil Procedure, unless clearly inapplicable.").

**{¶ 10}** As to the merits of its motion, the sheriff's department contends that the court should dismiss for lack of subject-matter jurisdiction Wilson-Simmons's discrimination and attorney fee claims under Sections 1983 and 1988, Title 42, U.S.Code because the federal district court's October 1997 judgment is *res judicata* on these claims. The sheriff's department's contention lacks merit. *Res judicata* is an affirmative defense that does not divest the second tribunal of subject-matter jurisdiction. *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 122, 656 N.E.2d 684, 687; *State ex rel. Flower v. Rocker* (1977), 52 Ohio St.2d 160, 162, 6 O.O.3d 375, 376, 370 N.E.2d 479, 480.

**{¶ 11}** In addition, the sheriff's department's additional claim, that this entire action is moot because Wilson-Simmons's only reason for seeking e-mail records was to support her federal case, is meritless. Wilson-Simmons's purpose in requesting these records is irrelevant. See, *e.g.*, *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 610 N.E.2d 997, syllabus ("A person may inspect and copy a 'public record,' as defined in R.C. 149.43[A], irrespective of his or her purpose for doing so.").

{¶ 12} Based on the foregoing, we overrule the sheriff's department's motion to dismiss for lack of subject-matter jurisdiction.

*Motion for Partial Summary Judgment*

{¶ 13} Following the submission of evidence and briefs pursuant to our alternative writ and schedule for the presentation of evidence and briefs, Wilson-Simmons filed a motion for partial summary judgment, and the sheriff's department filed a motion to strike Wilson-Simmons's motion.

{¶ 14} We grant the sheriff's department's motion to strike Wilson-Simmons's motion for partial summary judgment. Civ.R. 56 motions for summary judgment are clearly inapplicable in original actions in this court under the procedure specified in S.Ct.Prac.R. X. See *State ex rel. Findlay Publishing Co. v. Schroeder* (1996), 76 Ohio St.3d 580, 581, 669 N.E.2d 835, 837. Following the submission of evidence and briefs in an original action in this court under S.Ct.Prac.R. X(6) and (7), the case is ready to be "tried" on the merits. No summary judgment motion is necessary or appropriate. Here, the parties, including Wilson-Simmons, had already presented evidence and briefs on the merits. Her subsequently filed motion for partial summary judgment is merely a poorly disguised attempt to authenticate evidence that was the subject of the sheriff's department's motion to strike evidence.

*R.C. 149.43; Public Records*

{¶ 15} Wilson-Simmons contends that she is entitled to a writ of mandamus to compel the disclosure of the requested e-mail.

{¶ 16} Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426, 639 N.E.2d 83, 89. A "public record" is "any record that is kept by any public office * * *." R.C. 149.43(A)(1). R.C. 149.011(G) broadly defines "records" to include "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of

any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." See, *e.g.*, *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 246-247, 643 N.E.2d 126, 128.

{¶ 17} The sheriff's department asserts that the requested e-mail does not constitute "records" for purposes of R.C. 149.011(G), and therefore it is not accessible as "public records" under R.C. 149.43. The sheriff's department is correct.

{¶ 18} The requested e-mail does not constitute "records" for purposes of R.C. 149.011(G) and 149.43. R.C. 149.43(A)(1) "does not define a 'public record' as any piece of paper on which a public officer writes something." *State ex rel. Steffen v. Kraft* (1993), 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689. "To the extent that any item * * * is not a 'record,' *i.e.*, does not serve to document the organization, etc., of the public office, it is not a public record and need not be disclosed." *State ex rel. Fant v. Enright*, 66 Ohio St.3d at 188, 610 N.E.2d at 999. If, as alleged by Wilson-Simmons, the requested e-mail consists of racist slurs against her by individual co-workers, then, although reprehensible, the e-mail does not serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the sheriff's department. There is no evidence or allegation that the alleged racist e-mail documented sheriff's department policy or procedures. It was allegedly circulated only to a few co-workers and was not used to conduct sheriff's department business.

{¶ 19} This conclusion, that the requested e-mail is not a record for purposes of R.C. 149.43, is supported by both state and federal precedent. See *Steffen*, 67 Ohio St.3d at 439, 619 N.E.2d at 689 ("A trial judge's personal handwritten notes made during the course of a trial are not public records."), and cases cited at 67 Ohio St.3d at 440, 619 N.E.2d at 689; *Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers of Am. v. Voinovich* (1995),

100 Ohio App.3d 372, 654 N.E.2d 139 (Governor's personal calendars and appointment books did not constitute records subject to disclosure under R.C. 149.43 because they did not serve to document any official activities or functions.); *Bur. of Natl. Affairs, Inc. v. United States Dept. of Justice* (C.A.D.C.1984), 742 F.2d 1484, 1492 ("Where, as here, a document is created by an agency employee, consideration of whether and to what extent that employee used the document to conduct agency business is highly relevant for determining whether that document is an 'agency record' within the meaning of FOIA [the federal Freedom of Information Act]."); *Gallant v. Natl. Labor Relations Bd.* (C.A.D.C.1994), 26 F.3d 168, 172 ("[E]ven though employing agency resources in the creation of the correspondence is a relevant factor in the agency record analysis, the utilization of agency resources in this case is not as significant as the other factors employed in our precedents, which compel a conclusion that the * * * correspondence was personal, rather than attributable to the agency.").

{¶ 20} Therefore, although the alleged racist e-mail was created by public employees via a public office's e-mail system, it was never used to conduct the business of the public office and did not constitute records for purposes of R.C. 149.011(G) and 149.43.[1]  See *Bureau of Natl. Affairs* and *Gallant*.

{¶ 21} In addition, even assuming that the requested e-mail constitutes "records" under R.C. 149.011(G) and 149.43, Wilson-Simmons would still not be entitled to a writ of mandamus.  Due to Wilson-Simmons's more than two-year delay in bringing this action after the sheriff's department refused to provide access

---

1. In so holding, we reject the sheriff's department's broader assertion that *no* public office e-mail would ever be public records under R.C. 149.011(G) and 149.43.  In other words, sometimes, public office e-mail can document the organization, functions, policies, decisions, procedures, operations, or other activities of the public office.  See *Armstrong v. Executive Office of the President* (C.A.D.C.1996), 97 F.3d 575 (access to e-mail relating to government activities sought under FOIA); see, also, *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 461, 584 N.E.2d 665, 670, holding that it is unnecessary for an expression to be in a particular medium for it to be a public record.

to the requested e-mail without Wilson-Simmons's paying a reconstruction fee, the requested records are no longer available. *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 517, 664 N.E.2d 527, 528, quoting *State ex rel. Fant v. Mengel* (1991), 62 Ohio St.3d 197, 198, 580 N.E.2d 1085, 1086 ("The Public Records Act, R.C. 149.43, does not require that a public office create new documents to meet a requester's demand."). There is no evidence or assertion that the sheriff's department violated any applicable records retention provision by writing over the records in the routine operation of its computer system. See *Cal-Almond, Inc. v. United States Dept. of Agriculture* (C.A.9, 1992), 960 F.2d 105, 109, citing *Nolen v. Rumsfeld* (C.A.5, 1976), 535 F.2d 890, 891 ("Absent a showing that the government has improperly destroyed 'agency records,' FOIA does not require these records to be recreated."); *Jones v. Thompkins* (July 14, 1995), Summit App. No. 16937, unreported, 1995 WL 434353 ("Respondents submitted an affidavit which said that it is routine practice to erase and recycle hearing tapes thirty days from issuance of the hearing decision. This court cannot order a public agency to provide copies of items that do not exist.").

{¶ 22} Wilson-Simmons contends that she is nevertheless entitled to a writ of mandamus despite the nonexistence of the requested e-mail because she is also challenging the sheriff's department's charge for reconstruction of e-mail and standard fee schedule. This contention is meritless. Under R.C. 149.43(C), a mandamus action is appropriate only " '[i]f a person allegedly is aggrieved by the failure of the governmental unit to promptly prepare a public record and make it available to the person for inspection in accordance with [R.C. 149.43(B)].' " *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52-53, 689 N.E.2d 25, 28. Because the records requested by Wilson-Simmons were not records for purposes of R.C. 149.43, she was not aggrieved so as to be entitled to a writ of mandamus. Additionally, she is thus not entitled to attorney fees under R.C. 149.43(C).

*Sections 1983 and 1988, Title 42, U.S.Code*

**{¶ 23}** To the extent that Wilson-Simmons seeks a writ of mandamus and attorney fees pursuant to Sections 1983 and 1988, Title 42, U.S.Code, she has an adequate remedy in the ordinary course of law through her Section 1983 action in federal court and an appeal from the adverse judgment rendered by that court. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 91-92, 637 N.E.2d 306, 309.

*Other Motions*

**{¶ 24}** The parties' remaining motions and requests are moot. Denial of the writ and attorney fees is warranted even if we considered Wilson-Simmons's amended complaint and all of her submitted evidence.

**{¶ 25}** Based on the foregoing, we deny the writ and the request for attorney fees.

*Writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____